The next case, Gonzales v. Superintendent Graterford SCI. Okay, Mr. Wiseman? Yes, good afternoon, your honors. Good afternoon, you may proceed. I'm sorry? You may proceed. Thank you. May it please the court, I'm Michael Wiseman, I represent Miguel Gonzales, and I'd like to reserve three minutes for rebuttal. The court has granted a CLA on two issues, whether there was cause and prejudice, and whether the district court abused its discretion with respect to the appointment of counsel. I'll address them in that order, unless the court has another preference. No, that's fine, and we appreciate your taking Mr. Gonzales' case, Mr. Wiseman.  Cause is, of course, a familiar concept. It has to be an objective, external impediment to the full complying with state court procedures and rules. Let's start right there, if you could, okay? Your client goes almost immediately to the federal court after his direct appeal. Correct. And he, you know, looks like maybe somebody in the prison helped him put together his filing. But he says some significant things in that filing, one of which is, and I'm going to quote here from A159 and A160, that pursuing his PCRA remedies would have required the appointment of PCRA counsel from the same office where his public defender was from, resulting in, quote, an actual conflict of interest. And then he says, quote, he would not consent to this type of representation, as such would be against his wishes. Thus, Mr. Gonzales did not pursue the Commonwealth's PCRA remedy, close quote. I read that, and I thought, like the district court did, is this not a deliberate choice? Sure, sure. Your Honor, I'm prepared to respond to that. At pages 159 through 162, Mr. Gonzales, in his pro se brief in support, which the district court called a traverse, he offers four reasons for not having exhausted the claims in state court. Two of those reasons, I would concede, would not establish clause, the one that you just recited. He also talks about having gotten some bad advice from a jailhouse lawyer and not having been familiar with the exhaustion requirement. And I fully agree that those two reasons would not constitute clause. However, he goes on to talk about what I have characterized in my briefing as the two pieces of misadvice given to him by his trial lawyer at a time when he was no longer counsel. Right, but how could that be clause? You're talking about the letters his former counsel sent. Yes, exactly. But prior to receiving those letters, he had already skipped the state process and had gone to federal court. Not irrevocably, though. At the time that the second piece of misadvice was given to him in a letter dated June 30, 2011, my arithmetic shows he had 104 days left on the PCRA statute. Also of significance in that second letter is, in other words, he still could have exercised. There's no rule that says you have to go to one place first. He could have gone back. Right, but he didn't go to federal court because of bad advice. Not initially. The first letter of the lawyer says file a PCRA. Well, sort of. But before that, he had already gone to federal court. That's correct. And then later, the next letter says, well, you've exhausted. The first letter, and this is all very mysterious to me, the first letter at 198 of the appendix is from a paralegal. It says it contains a number of pieces of misadvice. First, this is your last chance to have your issues heard, so you should file a petition immediately. That, of course, isn't true. And then the letter goes on to say you should use the issues that Attorney Nemozinsky. That's bad advice. But here's the point that I'm confused by. Whatever you say about the alacrity in which he has to move in the main letter, it is correct that he's got to move. He doesn't have to move immediately. I'll concede that he has time until October, mid-October of 2011. Correct. Right, so he's got whatever, four or five months. But that piece of advice is correct. But what's more troubling to me is why isn't Mr. Nemozinsky, why isn't he persona non grata? Why isn't what? Shouldn't we treat him as essentially persona non grata at that point? He's not his lawyer. Well, that's exactly right. And the question becomes, okay, what is the principle that you're asking us to set out? If a former lawyer gives you bad advice, you may come to federal court and say, because of that former lawyer's bad advice, please excuse my procedural default. Is that the rule? Because that seems to be where we're going, which seems funny. And I appreciate, Judge Greenaway, the court's desire to be able to establish a rule. But this case is so unusual, so sui generis, because you have a lawyer. And I'm not necessarily ascribing a bad motive to a trial lawyer reaching out as he did, but it certainly does look unseemly when the person whose ineffectiveness would be at issue had his case proceeded properly. And Judge John Millen did find the chronic claim to be of arguable merit. If that lawyer reaches out on his own and starts giving bad advice, that prevents the claim from being heard. But tell me if I'm wrong in making this assumption based on the record. I thought at this point your client had already made an affirmative statement that he's no longer my lawyer. I know it was in the federal form. I believe it was in the federal form, not the state form. But there was an affirmative statement by your client, he's not my lawyer. So what is the rule that we're going to say? You've essentially shunned, whatever verb you want to use, shunned, revoked, dismissed him as your lawyer? There's not a lot of – look, I can't find a case just like this. This is more like a law school hypothetical than anything else. The case I think, which is why this gentleman shouldn't have been going pro se, that's blunt, too. The case that comes closest is Haynes v. Cain, a Fifth Circuit case posted 2001. I'm sorry, that's the wrong section. I'll get to that. But the Supreme Court has never given us a definitive catalog of what constitutes cause. I mean, there's a couple of big categories. We don't need a specific rule. Let's zoom in on it. Does it have to be but for cause? Does it have to be but for cause? In other words, does the impediment have to be something which a court could look at and say, but for that impediment, this person would have filed? Or can something less than that? I don't think – well, I think it could be something less. It's hard on this record because there's been no evidentiary hearings on this. We don't know exactly why Mr. Gonzalez did what he did or why this lawyer did what he did. Twice reaching out can be conflicting and wrong. If it has to be but for cause, would you at least concede that your client can't meet that standard? Because it wasn't the letters that caused him to go to federal court. No, but we don't know if in that four- or five-month period if he might have been getting some other suggestions, and I really don't know. But that doesn't help him. Right. That doesn't help him because that's in the ether. Well, it's in the ether because there's been no development of it because Judge Nealon dismissed it without even recognizing the cause argument. He just said, well, you didn't even allege the cause of prejudice. Isn't it a real problem that for six or seven weeks, however we characterize Mr. Nemezinski, there's advice that you should move on your PCRA, and that is probably, among everything that's been said, accurate. You should move. Now, whether you need to move within seven weeks. No, no, but there's a critical piece of that advice. The advice is you should move and use the claims that I raised on the appeal. It's just not a possibility. We all get that. That's important, though. You're telling this guy who clearly is a trust issue. But who is he? Who is what? Who is the guy? The guy is your dismissed lawyer who you no longer want to represent you. Right, but he's reaching out in a way that would lead a reasonable person to say, oh, maybe this guy really does care about it. He's telling me to do this. If we establish the rule that if you follow the advice of your dismissed lawyer. Who has a conflict. Who has a conflict. Add that in. Who has a conflict. You may rely on it, and a reviewing court will say that was okay and excuse you. I think the problem with all respect, of course, the problem I'm having with your question is these are concepts of equity, and you are asking for a rule. The equities here is that when you have a trial lawyer with a conflict who's given two pieces of bad advice before the PCRA statute runs out that prevents you from having your claim against him heard, equity says you should find cause. That's the rule. When you say it prevents equity. You can't divide it. I mean, these cases, you know, I pulled my hair out. These cases are just not out there, you know, that look like this case. This is an unusual case. You won't be opening floodgates. You'll be giving Miguel Gonzalez a chance to have a substantial claim of trial counsel and effectiveness, a chronic violation heard. That's all it is. Let me ask you about the chronic aspect of the case because one of the things I keep wrestling with, it's been some years since I've read Nixon, but that's a pretty striking case. I think you'd agree, right? I do remember being sort of shocked that, you know, in a death case, it says my client did it, right? And as I recall, the holding of the Supreme Court is that that was a strategic choice to try to lay the foundation for a valid to save his life on the death phase, right? Right. So it's very different. Well, it's very different, but my trouble or my thing I'm having difficulty getting my head around is that there's a lot of argumentation from your side that, well, this diminished capacity defense just doesn't work. First of all, he didn't admit that he shot the woman, and the expert report didn't fit with that theory. But if it was a strategic decision in Nixon to say the very stark thing of my client is guilty of homicide, why is it not a strategic decision to try to wiggle in a diminished capacity defense even if it doesn't really work? Because the answer is two reasons. One is there's no record as to why the lawyer proceeded as he did. And secondly, it was impossible. Pennsylvania law is not often clear, but it's very clear that you can't get a diminished capacity third degree instruction without an admission of guilt, an admission of having done the act, which would say guilt, of having committed the offense. And so as a matter of clear law, and the superior court said that in their direct appeal opinion, as a clear matter of Pennsylvania law, that was not an available defense. Did he have a defense of mistake even if he didn't have a defense of diminished capacity? Of mistake? Yeah. In other words, is it possible that this public defender was making a choice, whether it rises to the level of constitutional effectiveness or not, set aside for a moment, but making a deliberate choice not just about diminished capacity but to say, yeah, the evidence here is so overwhelming, I've got to say my guy did it. But we're going to say he did it by mistake. He was confused about who he was shooting. He was fearing for his life because of Jay Dixie out there, et cetera. What was telling him? I mean, in other words, your argument for prejudice under chronics seems to hinge absolutely on the assertion that these two things are mutually exclusive. You can't have a diminished capacity defense and have a client who's denying it. But if there was another potential defense on the table that he was reaching for, even if it wasn't diminished capacity, where he thought it's important for me to lay the groundwork by admitting my client's a shooter. He may have had some notion in his head, and it was a tough case for the defense, but there are two points they're tying. One is that in his closing argument, he ends by saying, I'm not going to suggest a verdict to the jury. He doesn't even tell the jury what verdict he's looking for because he had nothing to say at that point. And the second thing is, even if he had a strategy, the law says you can't tell the jury your client committed the act when your client is saying, I didn't, and he didn't consent to it, and he, in fact, testified to the contrary. He's not allowed to do that. Why shouldn't we infer that the lawyer's strategy was upended when, much to his surprise, his client took the stand and said he didn't do it? He knew from the beginning, and we've laid out in all these – Do we know that? Yeah, I believe we do. In opening statements, counsel sort of gave two opening statements in this case. They sort of snuck in the second one where they conceded that he committed the act. But in the first opening statement, the lawyer says to the jury that whatever he says is not reliable. It's pretty clear in the dialogue going back and forth about the Fishbein report that this guy is going to testify. They knew he was going to testify. Did he know what he was going to say? Yeah, I believe, yeah. Because it just seemed like a very awkward sidebar with the judge where the lawyer was put in a position of having to violate the rules of professional conduct or tell the judge what was really going on. The judge and the prosecutor both seem to be saying, hey, be quiet, because it sounded like, when you look from the record, like he was about to defend himself by saying, we came in here with an understanding that we were going to diminish capacity. If I get past the clause problem, which I hope I do, I would submit that the proper resolution in this case is to send this back to the district court, as I suggest in my brief, for briefing on the substantive claim. I think you need a hearing to determine whether it is. But to do that, we've got to have both cause and prejudice. But I don't think the prejudice standard at this stage doesn't necessarily mean I have to prove to you or I have to demonstrate to you that I would win the argument. I think it has to be, it's a lesser standard. So I think you can send it back for full briefing just on the, and whatever other effect of this claim. District court doesn't require, show that there would be a different result? Well, a reasonable probability of a different result. But you can't do that on an appellate record with no development. There has to be a hearing on this issue. It's a challenge, right? Because the burden is on your client to show cause and prejudice on the record we've got. And I would need to have a hearing to be able to do that. All right. Well, thank you very much, Mr. Weiser. Is there anything else you want to say before I have Mr. Arreola? Yeah, I guess I didn't get to talk about the abuse of discretion upon your counsel issue. No, we have the brief. If there's something you need to add to the brief, let me know. I'll rest on the brief then. Thank you. Thank you. Mr. Matthews. Please, court, good afternoon. Mark Matthews for the Commonwealth. The Commonwealth's position is that the defendant failed to exhaust his state court remedies and has failed at this time to allege cause to have his state court remedies put back in place. The district court denied his habeas based on Shultz and Dello, where actual cause is actual innocence. Well, Mr. Matthews, if you had a – let's run a thought experiment here. If the court had written to Mr. Gonzalez and said, your only remedy to look at any of this now is to get it to federal court, would that constitute an impediment and cause? In federal court? Yeah. Would it be an impediment because he hadn't exhausted his state court remedies? Would it be an impediment to his filing and exhausting his state court remedies? In other words, if this letter had not come from the public defender's office, but it had come from the court saying, hey, here's what you should do. You should go – you should file with us right away. Or imagine it went from the state. It went from the state court saying, go to federal court now. Obviously, it's the state court following up on Judge Jordan's question to try to help you. If the state court had issued an order saying, we don't accept your filing, you have to go to federal court, that's obviously cause. Then there would be state interference or government interference. Okay. Now, what about his point where there's, instead of an order saying you can't come here, a letter along the lines of the advice that he got from his former lawyer in this case? Is that cause? From the court? A letter from the court? Yeah. Although I find that highly improbable. Well, he was surprised that it was impossible. It's not entirely impossible, right? That's the judge involved. I think it would be close if it came from the court telling him that he had no state court remedies and he would have to go to federal court. Sure, but the word order doesn't have magic to it, right? If it's coming from the court, it's coming from the court. How about if it came from the prosecutor's office? If the prosecutor wrote him and said, don't file here, go to federal court, that's what you need to do. You would have state action, I would believe. Okay. Here you've got a public defender, state actor, right, of sorts, who's got a conflict of interest and who writes to this gentleman and tells him something which is flatly wrong, completely wrong. Shouldn't that cause us some concern about cause? If that may be, you know, if you're getting... Leave out of the fact, out of this, that it's his former lawyer and maybe there's supposed to be some residual responsibilities. Why is that so different that we would say cause if it's coming from the court, not cause if it's coming from the prosecutor, not cause if it's coming from your own former defender? Up until this point in Appellant's brief, he's referred to it as misadvice. This is the first time that I've heard it referred to, I think, as nefarious, that there may have been intention by the public defender to mislead. I'm not even suggesting that. That's not in my question. I understand that. But I don't believe a defense counsel would intentionally mislead someone he represented in trial to establish cause. He may have given a misadvice, but I don't think it was done to the extent that it establishes cause. But hang with me here. Why is it different? Why would we say it's cause sufficient to excuse a failure to exhaust if it comes from two actors in the state proceedings but not from the third actor in the state proceedings? The Commonwealth is adversarial to defend that. Sure, but I think everybody has agreed here that we're not, maybe not, but I thought everybody was sort of on the same page that agency isn't an issue here. He's not bound by this lawyer anymore. It's his former, it's his ex-lawyer, right? Okay. So can you give me a reason, a logical reason why we would say cause in two out of three cases but not the third? Only that at that time he's not entitled to representation beyond his direct appeal. He should be making decisions on whether to file his pro se PCRA on his own. Precisely, but now he's got an external thing coming in, which is what the definition of cause is. Something external to you that impedes your ability to exhaust your remedies. So now he's got something external to him, this former lawyer, telling him flat out incorrect. You've got to go to federal court. I'll just go back to it again. It's not the Commonwealth, it's not adversarial, and it would be different if it was coming from the Commonwealth or the court who would possibly intentionally mislead the defendant. If it were his real lawyer, let's take this actual situation but tweak it just a little bit and assume that there were a right to counsel at this level of habeas PCRA. If that lawyer is representing him and he says, hey, let's file PCRA, and that lawyer says no, cause? To have the federal court then provide him with state court remedies that he failed to exhaust? He doesn't exhaust the state court remedies because his current valid counsel, forget the breakdown of the relationship here, obviously he and his counsel were at odds, he got convicted, or he wasn't happy with them. But if he's still simpatico with his lawyer and he has a right to counsel and he says, okay, what's the next step, and the lawyer says, well, I'm working on your federal habeas, and he says, well, I thought, you know, don't we go to state court on PCRA? And the lawyer says, no, that's cause, isn't it? Can we go back to then the standard of actual innocence? Why does it have to be actual innocence? Why can't on those facts, why can't he satisfy the cause requirement of Strickland? Because his gladiator, his lawyer has basically prevented him from doing what he needs to do, which is exhaust his rights in state court. What is the prejudice then? Well, I'm getting there again. I'm trying to ask whether it's cause or not. I think it is, but you haven't conceded that. And what I'm getting at is if that's cause, then I guess the question becomes here, it really matters that this lawyer is not really acting qua lawyer, he's acting sort of as what's called the unhelpful, officious intermeddler. So is that why you win the case? Because the distinction between, you know, your real counsel giving you advice that blows your chances at state court, not only state court review, but then an opportunity to be heard in federal court. I think what tips it is the actual innocence. They haven't provided any new evidence to indicate that this defendant is against you. That goes to prejudice though, right? Yeah, we're just sticking on the first one. We're trying to noodle through the cause because, as Mr. Wiseman pointed out, it's a fairly unusual fact pattern we're presented with in this case. So your only line drawing on this clause issue, as my colleagues have asked you, is it's got to be adversarial? Because what we have here is obviously not someone who is in his camp per se, not someone who is adversarial, but someone who has really not ascribed any role with him officially because he's no longer his lawyer. So is your point that anyone who falls into that category wouldn't be an external factor, let me see now, external factor impeding compliance with exhaustion? At what point does the misadvice overshadow the defendant's responsibility of filing timely PCRA motions? He could be getting advice from jailhouse lawyers within the correctional facility. He could be getting advice from friends that may be no attorneys. At some point he has the responsibility of filing a timely PCRA petition. The majority are filed by pro se defendants. Well, let's think about this in the context of the Maples case. In Maples, the Supreme Court looks at what happens and says there's a complete abandonment of the client, a total abandonment of the client, and that's cause. Here you have a circumstance where rather than abandonment, in one respect you might argue it's worse than abandonment. It's actively working against the guy's interest by giving him erroneous advice. If it's enough of an impediment for your lawyers to stop talking to you, if that's cause, why isn't it cause if your lawyer or ex-lawyer keeps talking to you and steers you in the wrong direction? But at that point he's not representing a defendant. Is he no more than the jailhouse lawyer or a friend who's given him bad advice? The defendant does not want him to represent him. But he's bringing, he may not want him to represent him, but are you saying that a former lawyer stands in no different position toward a client? There's no, particularly a state-employed public defender, stands in no different position toward a former client than some schmo off the street? This defendant told the court he did not want the public defender's office to represent him or this attorney. So now when he receives advice from the attorney, then he's arguing, well I took it and it turned out wrong for me. All right, so that sounds like your best argument is on the actual facts of this case rather than based on the categorization of the former lawyer's status, et cetera. Correct. So you're saying he, you know, he went to federal court before any of this bad stuff happened. I don't want you to represent me, but now you gave me advice and I was misled by that advice. Let's assume we got past cause and we thought, maybe there's cause here. So we were looking at prejudice. What's your best argument for why it's not prejudice for, in circumstances like this? You're not, you didn't face prejudice because you didn't ever have a chance to raise that your lawyer stood up without your consent and said you're the guy who shot your girlfriend. Well, so far I haven't heard any new evidence of any new witnesses, new DNA analysis. I believe in Delo there was witnesses that came forward who said this defendant wasn't at the scene. Isn't it, is it enough by itself to call into question the verdict if you've got your own lawyer saying to the jury he did it? Well, again, we go back to he was trying to establish a diminished capacity defense and he represented to the court, he may not have done it artfully, that he had the consent of the defendant to do that. Now, that may have been a PCRE issue at the trial court level, but we're not there. So, you're not prepared to concede that having your lawyer stand up and say, yeah, my guy did it, would perhaps undermine the confidence we might have in the jury verdict? If there's a strategic reason for doing that, to get a lesser verdict, the counsel has no other option but to do that. How about where it's so bad that the prosecutors say to the court, basically, look, we just feel compelled to say we had nothing to do with that and we just want you and any appellate court looking at it to know that wasn't us. We didn't just do this thing where he said his client did it. Now, I've paraphrased loosely, but that's in the record with the prosecutor saying that on the record. Does that imply that the prosecution itself thought there was prejudice there? Well, I believe they thought that it was mishandled at the time. Possibly the defense counsel sort of came to the court outside of the jury and made the representation that the defendant is going to say he did it and the court could have colloquied the defendant and that would have handled it much better than where we are today. But that did not happen. Is the question of prejudice the same question in this context of cause and prejudice as it is when establishing prejudice on an ineffective assistance of counsel claim? Is it the same standard that we're trying to look at? Are they different? I don't believe so. I think the standard would be much higher at this point. Going back to you have to establish actual innocence. Okay. And his answer, though, is I think we'll hear from Mr. Wiseman. He'd like to try to do that, but he hasn't had an opportunity, hasn't had a hearing. What should have been done differently on that score? If there were hearings, there could only be a mischaracterization of the evidence and what the jury heard. So far as I said, there's no new witnesses that have come forward. There's no new DNA evidence that has come forward to indicate that it was anybody else but the defendant. Can I ask a question about the district court's decision to not allow a lawyer for Mr. Gonzalez? At the time the court assesses or makes decisions, well, let me back up and ask it this way. We have somebody who's blind. We have an indisputably challenging area of the law. We have a record that indicates some confusion about whether things were sent or not sent and received by the court. Under those circumstances, was it an abuse of discretion for the court not to give a lawyer to Mr. or find a lawyer for Mr. Gonzalez? Should Mr. Wiseman have been contacted a long time ago? And if he had been, could he have made claims that would have gotten before the state court in a timely fashion? The best way I can answer that is if he had filed his pro se petition with the trial court, the trial court would have appointed counsel for him. Now, unfortunately, we go back to having the same thing with the public defender's office. There may need to be conflict counsel, but that new attorney would have then filed an amended petition and he would have proceeded with counsel at that time. So it's hard for me to say at this point that he should not have counsel. He should have most likely been granted counsel. So he would have been given that choice in the state court. At the state court, he would have gotten it there, so I don't know why. I don't understand why he would have been denied at the federal level counsel. All right. All right. Thanks. Thank you very much. The case I meant to cite before is on page 28 of my brief, Manning v. Foster. That's the closest I've come to a case that's somewhat like this, where you're getting this advice from a lawyer with a conflict. You know, when the Supreme Court, and this gets back to Judge Greenway's questions, when the Supreme Court decided Maples, I don't know what the rule was that they were contemplating that would address a, you know, pro bono counsel from a big law firm who leaves and there's a mix-up in their mail room. I mean, it's a very fact-specific set of circumstances. And I think what I fall back on again is the equities. You have a lot of equities. This is not a frivolous claim. It's a substantial claim, and it deserves to be heard. The problem with, you know, the Sullivan and Cromwell snafu is that that seems sui generis. I'm not sure this is, and I'm confident that, you know, this is not going to be viewed as this wild anomaly that won't be used by many. Well, I mean, I don't want to be presumptuous to tell the court how to write an opinion, but, you know, an opinion addressing these specific facts to do justice in this case. You're okay with a narrow victory? And non-presidential, and I won't tell you that. That would be perfectly acceptable. You know, I think what we're all learning, though, is that NPO means something to us, but not to the bar. Would it have made any difference at all had there been a lawyer in the mix earlier? So let's assume. Yeah. Well, how? Explain how, given the facts we have, there's the letter on June 30, 2011, which is what you hang your hat on mostly. Yeah, yeah. This matter doesn't actually come to decision until almost three years later, close to three years later. Just in the ordinary course of the litigation, wouldn't the time have expired anyway by the time the court got to it? I think, who knows, but there is one bad fact which the court hasn't identified. I'll do it for you. The first request for counsel didn't occur until after the PCRA statute had run. So if it hadn't, I would have made that argument. But I think the point is, is had a lawyer been appointed at some point by Judge Nealon, hopefully the arguments that I'm making about cause and prejudice would have been made, hearings could have been held. Judge Hardiman, you asked a question about cause if a lawyer had been appointed to him, and the answer is yes, it would have been caused in Esther Martinez's case. I mean, we now know that initial post-conviction counsel's misadvice or ineffectiveness is cause, if there's a substantial claim like there is here. And just to clear up one point here, my opponent is somewhat off, I think, when he keeps talking about new evidence, and none of that applies. Schlinke-Bellow is apples and oranges to where we are here, which is a first petition. There's no requirement to show innocence. It's simply cause and prejudice, and I'll rest on that. Thank you very much. Thank you very much, Mr. Weisman. Thank you, counsel, for your arguments. We've got the matter under advisement.